Ryan R. Shaffer
Robert L. Stepans
James C. Murnion
MEYER, SHAFFER & STEPANS, PLLP
430 Ryman Street
Missoula, MT 59802
Tel: (406) 543-6929
Fax: (406) 721-1799
ryan@mss-lawfirm.com
rob@mss-lawfirm.com
james@mss-lawfirm.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| CLARK CANYON HYDRO LLC, | Civil Action No. _____ |
| Plaintiff, | |
| vs. | COMPLAINT AND JURY DEMAND |
| IDAHO POWER COMPANY | |
| Defendant. | |

COMES NOW the Plaintiff, Clark Canyon Hydro LLC, by and through undersigned counsel, and for its causes of action and claims for relief against the Defendant, states and alleges as follows:

///

///

## I. INTRODUCTION

1. Plaintiff Clark Canyon Hydro LLC ("Clark Canyon") brings this action seeking redress against Defendant Idaho Power Company ("Idaho Power") for damages exceeding $75,000 as a result of Defendant's tortious acts and breach of contract.

## II. PARTIES

2. Clark Canyon is a citizen of the State of Utah and the Province of Ontario, Canada because it is incorporated under the laws of Utah with its principal place of business in Toronto, Ontario.

3. Clark Canyon is registered to do business in Montana.

4. Idaho Power is a citizen of the State of Idaho because it is incorporated under the laws of Idaho with its principal place of business in Boise, Idaho.

5. Idaho Power is registered to do business in Montana.

## III. JURISDICTION AND VENUE

6. All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

7. This Court may properly maintain jurisdiction over Idaho Power because the claims asserted herein arise from Idaho Power transacting business within Montana; Idaho Power's commission of tortious acts accruing in Montana;

and Idaho Power entering into a contract with Clark Canyon for services to be rendered or materials to be furnished in Montana. M. R. Civ. P. 4(b)(1)(A)–(C), (E). Idaho Power's presence in and contacts with the State of Montana and this judicial district are sufficient to support an exercise of jurisdiction that comports with traditional notions of fair play and substantial justice.

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), (2).

9. Venue is proper in the Court's Butte Division. 28 U.S.C. § 1391; L.R. 3.2(b); Mont. Code Ann. § 25-2-121(1)(b); Mont. Code Ann. § 25-2-122(1)(b).

10. Clark Canyon hereby requests a trial by jury on all issues as guaranteed by U.S. Const. amend. VII; Mont. Const. Art. II, § 26; and Fed. R. Civ. P. 38.

## IV. FACTS COMMON TO ALL CLAIMS FOR RELIEF

11. All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

12. Clark Canyon is the owner and developer of the Clark Canyon Hydroelectric Project ("Project"), which is projected to produce between 14,169 MWh and 15,400 MWh of electricity annually.

13. The Project is located at the Clark Canyon Dam on the Beaverhead River in Beaverhead County near Dillon, Montana.

14. Clark Canyon and Idaho Power executed a Memorandum of Understanding ("MOU") on March 31, 2014.

15. The MOU is an enforceable contract supported by valid consideration.

16. As memorialized in the MOU, Idaho Power and Clark Canyon each made promises intended to lead to the eventual execution of other contracts whereby Clark Canyon would sell the energy produced by the Project to Idaho Power and deliver it to Idaho Power's Peterson Substation in Beaverhead County, Montana.

17. Under the terms of the MOU, Clark Canyon promised, *inter alia*, to give Idaho Power 50% of the renewable energy credits—a tradable, valuable commodity—generated by the Project.

18. Idaho Power promised, *inter alia*, that it would file for, and seek approval of, the Project with the Idaho Public Utility Commission ("IPUC").

19. Under the terms of the MOU, the parties agreed to the then effective seasonal hydropower rates for the Project in all months except for March and April, when the rates would instead be a surplus energy rate calculated from a market price.

20. Because seasonal hydropower rates can fluctuate both up and down, the

terms of the MOU locking-in specific Project rates were material to the parties' agreement, and by executing the MOU, both parties accepted the benefits and risks of such rates at the time they agreed to the MOU.

21. Under the terms of the MOU, and in specific reliance on Idaho Power's promise that it would seek approval of the Project, Clark Canyon agreed that if IPUC rejected the Project, liquidated damages would be forfeited by Clark Canyon to Idaho Power.

22. Due to an issue with Clark Canyon's Federal Energy Regulatory Commission's ("FERC") licensure, both Clark Canyon and Idaho Power agreed to delay IPUC's proceedings pertaining to approval of the Project.

23. In agreeing to delay IPUC's proceedings, both Idaho Power and Clark Canyon accepted the risk that the seasonal hydro power rates may rise or fall to their respective advantage or detriment.

24. In reliance on the promises made by Idaho Power in the MOU and its agreement to delay IPUC proceedings until the FERC license issue could be resolved, Clark Canyon gave up its opportunity to seek a different buyer for the energy produced by the Project at the then-existing hydro power rates.

25. In reliance on the promises made by Idaho Power in the MOU and its agreement to suspend IPUC proceedings until the FERC license issue could be resolved, Clark Canyon expended substantial time and resources on the

Project, including, but not limited to: (1) purchasing materials necessary for completion of the Project; (2) selecting and hiring new engineers to redesign the Project's facilities; (3) selecting and hiring contractors to construct the Project's facilities; (4) selecting and hiring permit and license consultants; (5) raising capital for the construction of the Project; and (6) resolving the FERC licensing issues.

26. In reliance on the promises made by Idaho Power in the MOU and its agreement to suspend IPUC proceedings until the FERC license issue could be resolved, Clark Canyon spent significant time and resources upgrading Idaho Power's power distribution infrastructure, thereby conferring a benefit on Idaho Power.

27. In May 2017, the FERC license issue was resolved and IPUC lifted the stay of proceedings upon the parties' request.

28. During the IPUC stay, the rates generally available to hydro power producers selling power to Idaho Power decreased, making the rate structure agreed to by the parties in the MOU detrimental to Idaho Power and advantageous to Clark Canyon.

29. Because generally available hydro power rates had decreased during IPUC's stay, Idaho Power did not want to pay Clark Canyon the higher rates agreed to in the MOU.

30. Having contracted to pay Clark Canyon rates for hydro power that were higher than then-current market rates, Idaho Power broke its promise to seek approval of the Project and instead asked the IPUC to reject the Project.

31. Based exclusively on Idaho Power's opposition to the Project, IPUC rejected the Project.

32. Idaho Power's failure to uphold its obligations under the MOU have resulted in significant harm to Clark Canyon.

33. Because IPUC rejected the ESA, Idaho Power has retained liquidated damages paid by Clark Canyon, and the Project's development is stalled.

## V. CLAIMS FOR RELIEF

### First Claim
### Intentional Interference with Business Relations

34. All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

35. Clark Canyon had a valid economic expectancy, which Idaho Power had knowledge of.

36. Idaho Power intentionally and willfully interfered with the expectancy, inducing its termination.

///

37. Idaho Power's acts were calculated to cause damage to Clark Canyon's business.

38. Idaho Power's acts were done with the unlawful purpose of causing damage or loss, without right or justifiable cause.

39. Idaho Power's acts directly and proximately caused Clark Canyon damages.

## Second Claim
### Intentional Interference with Prospective Economic Advantage

40. All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

41. Clark Canyon had a valid economic expectancy, which Idaho Power had knowledge of.

42. Idaho Power intentionally and willfully interfered with the expectancy, inducing its termination.

43. Idaho Power's acts were calculated to cause damage to Clark Canyon's business.

44. Idaho Power's acts were done with the unlawful purpose of causing damage or loss, without right or justifiable cause.

45. Idaho Power's acts directly and proximately caused Clark Canyon damages.

///

## Third Claim
## Negligence

46. All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

47. Idaho Power owed Clark Canyon the duty to exercise the level of care that a reasonable and prudent person would under the same circumstances.

48. Idaho Power breached such duty.

49. As a direct and proximate result of such breach, Clark Canyon has suffered damages.

## Fourth Claim
## Breach of Contract

50. All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

51. Idaho Power formed an enforceable, binding contract with Clark Canyon: the MOU.

52. Idaho Power materially breached the MOU by not seeking approval of the Project.

53. As a direct and proximate cause of the breach, Clark Canyon has suffered damages.

## Fifth Claim
## Breach of Implied Covenant of Good Faith and Fair Dealing

54. All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

55. Idaho Power owed Clark Canyon the duty to perform the MOU in good faith, with honesty in fact, and in observance of reasonable commercial standards of fair dealing in the trade.

56. Idaho Power violated such duty, thereby nullifying and significantly impairing the benefit of the MOU.

57. As a direct and proximate cause of such breach, Clark Canyon has suffered damages.

## Sixth Claim
## Tortious Breach of Implied Covenant of Good Faith and Fair Dealing

58. All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

59. Idaho Power owed Clark Canyon the duty to perform the MOU in good faith, with honesty in fact, and in observance of reasonable commercial standards of fair dealing in the trade.

60. Idaho Power violated such duty.

61. As a direct and proximate cause of such breach, Clark Canyon has suffered damages.

62. Idaho Power and Clark Canyon were in inherently unequal bargaining positions with respect to the MOU.

63. The motivation for entering the MOU was a non-profit motivation, i.e., to secure peace of mind, security, and future protection.

64. Ordinary contract damages are not adequate because (a) they do not require Idaho Power to account for its actions, and (b) they do not make Clark Canyon whole.

65. Clark Canyon was especially vulnerable because of the type of harm it may suffer and of necessity placed trust in Idaho Power to perform.

66. Idaho Power was aware of such vulnerability.

### Seventh Claim
### Promissory Estoppel

67. All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

68. Idaho Power made a clear and unambiguous promise to seek IPUC's approval of the Project.

69. Clark Canyon reasonably and foreseeably relied on the promise.

70. As a direct and proximate cause of such reliance, Clark Canyon has suffered substantial economic damages.

## Eighth Claim
## Unjust Enrichment

71. All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

72. Clark Canyon conferred benefits on Idaho Power.

73. Idaho Power appreciated and had knowledge of the benefits.

74. The acceptance and retention of the benefits by Idaho Power without payment to Clark Canyon for its value would be inequitable in these circumstances.

75. WHEREFORE, Clark Canyon claims relief against Idaho Power as follows:

    a.  Judgment against Idaho Power for general and special damages in amounts consistent with the allegations contained herein and to be established by the evidence at trial, including, but not limited to: lost operating revenue, lost profits, lost business opportunity, and lost time and other inconvenience.

    b.  Judgment against Idaho Power for Clark Canyon's costs incurred in prosecuting these claims, including reasonable attorneys' fees.

c.  Pre-judgment and post-judgment interest.

d.  Such other and further relief as the Court deems just and equitable.

DATED this 10th day of October 2018.

                              MEYER, SHAFFER, & STEPANS, PLLP

                              James C. Murnion

                              *Attorneys for the Plaintiff*