## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| CLARK CANYON HYRDO, LLC, | **CV-18-65-BU-BMM** |
| Plaintiff, | |
| vs. | **ORDER ON MOTION FOR SUMMARY JUDGMENT** |
| IDAHO POWER COMPANY, | |
| Defendant. | |

The dispute central to this case involves the proposed construction and operation of a hydroelectric facility located on the Clark Canyon Dam on the Beaverhead River in Montana (the "Project"). Despite years of effort, the Project never came to fruition. The Court's order addresses Defendant Idaho Power Company's Motion for Summary Judgment.

Plaintiff Clark Canyon Hydro, LLC ("Clark Canyon") filed a Complaint against Idaho Power on October 10, 2018.  (Doc. 1).  Clark Canyon alleged that Idaho Power breached its promise contained in the parties' Memorandum of Understanding ("MOU") by failing to "seek approval of the Project" from the Idaho Public Utility Commission ("IPUC").  (Doc. 1).  Idaho Power argues that it is entitled to summary judgment because there is no enforceable contract, or if

there is, no genuine issues of material fact exist as to whether Idaho Power fulfilled its obligations in the parties' agreement.  (Doc. 83).  Clark Canyon responded, arguing Idaho Power is not entitled to summary judgment.  (Doc. 105-1).

## BACKGROUND

Clark Canyon and Idaho Power entered into a series of agreements for Clark Canyon to sell electrical energy to Idaho Power. The Federal Energy Regulatory Commission ("FERC") granted Clark Canyon a license to construct, operate, and maintain a hydroelectric facility at the Clark Canyon Dam on the Beaverhead River in Montana. (Doc. 85 Statement of Undisputed Facts ¶ 11).

The Public Utilities Regulatory Policies Act of 1978 ("PURPA") directs FERC to promulgate rules that electrical utilities purchase energy from Qualifying Facilities ("QF").  (Doc. 85 ¶ 8); *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 384 (5th Cir. 2014).  The Project represents a QF under PURPA.  The IPUC serves as the state commission responsible for compliance with PURPA and FERC's regulations. (Doc. 85 ¶ 1).  The three-member IPUC is "vested with [the] power and jurisdiction to supervise and regulate every public utility" in Idaho.  Idaho Code § 61-501.  Therefore, under PURPA and FERC, the IPUC has the authority to approve or reject an agreement between a QF and a utility, can issue general procedures, and can engage in a case-by-case analysis.  *Rosebud Enters., Inc. v. Idaho Pub. Utils. Commission*, 917 P.2d 766, 772 (Idaho 1996).

Under PURPA, rates paid for power purchased from QFs may not exceed

Idaho Power's "incremental" or "avoided cost rate," which is established by the

IPUC.  This rate is defined as the "cost of energy which, but for the purchase from

[the QF], such utility would generate or purchase from another source."  (Doc. 85 ¶

9 (citing Doc. 52-37 at 1-2; *also e.g., Portland Gen. Elec. Co. v. Federal Energy

Regulatory Commission*, 854 F.3d 692, 695 (D.C. Cir. 2017); *Idaho Power v.

Idaho Public Utils. Commission*, 316 P.3d 1278 (Idaho 2013); 16 U.S.C. § 824a-

3(d); 18 C.F.R. § 292.101(6)).

Clark Canyon entered into several agreements with Idaho Power with the

intent to sell the energy generated through the Project.  PURPA requires all

contracts to be approved by the IPUC before becoming fully effective. (Doc. 85 ¶

10).  Clark Canyon and Idaho Power entered into a Firm Energy Sales Agreement

("2011 ESA") in May of 2011.  (*Id.* ¶ 14). The IPUC approved the 2011 ESA on

July 19, 2011.  (*Id*. ¶ 17).  A series of schedule delays prompted the parties to

extend the deadline for the operation date. The IPUC approved an amendment.

(*Id*. ¶ 22).  Clark Canyon failed to meet the operation date.  Idaho Power notified

Clark Canyon that it intended to seek liquidated damages and possibly terminate

the agreement if Clark Canyon failed to bring the Project online within 90 days of

the operation date.  (*Id*. ¶ 23).  Clark Canyon had not even begun construction and

so requested termination of the 2011 ESA and execution of a new agreement. (*Id*. ¶ 24).

The parties met and drafted an MOU outlining the terms negotiated at the meeting. (*Id*. ¶ 24). The parties executed the MOU on March 31, 2014. (*Id*.). The MOU terminated the 2011 ESA. (*Id*.). The MOU required Clark Canyon to pay Idaho Power $211,500 in liquidated damages and committed the parties to executing a future contract for the sale of energy. (Doc. 99-1). Once the new ESA was agreed upon, the MOU provided, in pertinent part:

> h. This new ESA will require IPUC approval, after the new ESA has been agreed to and signed by both parties, Idaho Power will file the new ESA with the IPUC seeking approval. In that filing Idaho Power will include information from this MOU in regards to the unique terms and conditions.

(Doc. 99-1).

Idaho Power and Clark Canyon entered into a new Energy Sales Agreement on May 30, 2014 ("2014 ESA"). (Doc. 85 at ¶ 29). The 2014 ESA contained a schedule operation date of June 1, 2017. (*Id.* ¶ 31). The 2014 ESA contained a merger clause and several warranties regarding Clark Canyon's FERC license. (*Id.* ¶¶ 32, 34). The 2014 ESA also contained a clause stating that it "shall only become finally effective upon the [IPUC's] approval of all terms and provisions hereof without change or condition and declaration that all payments to be made to [Clark Canyon] hereunder shall be allowed as prudently incurred expenses for

ratemaking purposes[.]"  (*Id.* ¶ 34).  The 2014 ESA barred any modification to the
2014 ESA "unless it is in writing and signed by both Parties and subsequently
approved by the [IPUC]."  (*Id.*).

Idaho Power filed the 2014 ESA with the IPUC on June 4, 2014.  (*Id.* ¶ 34).
FERC sent a "Notice of Probable Termination" of its 2009 FERC license during
the pendency of the IPUC proceedings.  (*Id.* ¶ 38).  FERC explained its intent to
terminate based on the fact that the Project had failed to start by the required dates.
(*Id.*).

The notice from FERC prompted Idaho Power, at Clark Canyon's request, to
seek a suspension of the case seeking approval at the IPUC until the parties
received more information regarding the status of the FERC license. (*Id.* ¶¶ 39,
40).  Idaho Power, Clark Canyon, and the IPUC agreed to suspend the procedural
schedule in the IPUC case.  (*Id.* ¶ 40).  FERC terminated the license for the Project
in March 2015. (*Id.* ¶ 42).

FERC issued a new license for the Project two years later on March 31,
2017.  (*Id.* ¶ 45).  The parties filed a joint motion with the IPUC to lift the
suspension and establish a new schedule for the IPUC case.  (*Id.* ¶ 48).
Meanwhile, the scheduled operation date deadline passed on June 1, 2017. (*Id.* ¶
49).  Clark Canyon unilaterally asked the IPUC to modify the 2014 ESA to extend
the operation date to December 31, 2019.  (*Id.* ¶ 52).  Idaho Power did not agree to

the modification.  (*Id.* ¶ 53).  Idaho Power filed its comments regarding the 2014

ESA with the IPUC on August 25, 2017, the same day that IPUC Staff filed

comments.  (Docs. 99-4, 99-7).

Idaho Power in its comments stated that it "has communicated to

Commission Staff ("Staff") and to Clark Canyon that because of the substantial

differential in avoided cost rates contained in the submitted ESA and that which is

available today, that the Company cannot simply agree to extend the Scheduled

Operation Date." (Doc. 99-4 at 2).   Idaho Power continued: "The Commission

must determine whether it is in the public interest to modify the submitted ESA

and approve the same—including the much higher avoided cost rates contained

therein that will be passed on to Idaho Power customers if the ESA is approved."

(Doc. 99-4 at 2).

Idaho Power also stated that the Scheduled Operation Date has passed and

the project configuration was now different.  (*Id.* at 7-8).  "Because of this, the

Commission cannot approve 'all terms and provisions hereof without change or

condition' as is required before the ESA becomes a fully effective contract." (*Id.*

at 2).  Idaho Power discussed the cost that modifying the submitted 2014 ESA

would have on Idaho customers. (*Id.*)

Commission staff filed comments regarding the 2014 ESA. (Doc. 99-7).

The staff comments recommended a rejection of the 2014 ESA because the

operation date deadline had passed thereby rendering the agreement invalid. (*Id*. at 3). The staff comments further suggested that the IPUC could not modify the 2014 ESA because it was already invalid, and that Idaho Power did not agree to the modification of the operation date. (*Id.* at 6).  The staff comments finally noted that approval would be unreasonable for Idaho's ratepayers. (*Id.*).

The IPUC rejected the 2014 ESA on October 13, 2017. (Doc. 85 ¶ 57). The IPUC found that it would not be reasonable to approve the agreement with the operational date that already had passed. The IPUC further found that it could not amend the agreement unilaterally to extend the deadline. (*Id.*).

Clark Canyon filed a complaint alleging that Idaho Power had breached its promise in the MOU by failing to "seek approval of the Project" from the IPUC. (Doc. 1).  Idaho Power requests that summary judgment be granted in its favor on the remaining claims.

## LEGAL STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary

judgment.  Factual disputes that are irrelevant or unnecessary to the outcome are not considered.  *Id.* at 248.  In ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.  The "mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat a properly supported motion for summary judgment.  *Id.* at 252.

A court must recognize, however, that the evidence presented by the non-moving party must be "believed" at the summary judgment phase and "all justifiable inferences are to be drawn in his favor."  *Id.* at 255.  Clark Canyon, as the non-moving party seeking to survive summary judgment, "need only present evidence from which a jury might return a verdict in his favor."  *Id.* at 257.

The Court applies state contract law when sitting in diversity jurisdiction. *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017).  The Court has already determined, pursuant to the parties' agreement, that Idaho law governs.  (Doc. 56).

## DISCUSSION

The claims remaining are as follows: breach of contract, breach of implied covenant of good faith and fair dealing, tortious breach of implied covenant of good faith and fair dealing, promissory estoppel, and unjust enrichment.  (*See* Doc. 1 Complaint; Doc. 64 Order on Stipulation of Dismissal).  Clark Canyon concedes

that it cannot pursue its tortious breach of the implied covenant of good faith and fair dealing under Idaho law.  The Court need not address this claim.  The Court addresses the remaining claims.  The Court declines to bar Clark Canyon's claims based on claim or issue preclusion because Clark Canyon did not bring these claims or issues before the IPUC.  *See Ticor Title Co. v. Stanion*, 157 P.3d 613, 618 (Idaho 2007).

## A. BREACH OF CONTRACT

Idaho Power first argues that the 2014 ESA superseded and rendered the MOU unenforceable.  Idaho Power contends that without an enforceable contract, Clark Canyon fails to establish the first element of its breach of contract claim.  The 2014 ESA contains a merger clause: "[the 2014 ESA] constitutes the entire Agreement of the Parties concerning the subject matter hereof and supersedes all prior or contemporaneous oral or written agreements between the Parties concerning the subject matter hereof."  (Doc. 99-3 at 35).  Clark Canyon asserts that the 2014 ESA could not supersede the MOU because it never became effective as the IPUC ultimately rejected it.  Clark Canyon also notes that Idaho Power received $211,000 in liquidated damages under the terms of what it contends to be an unenforceable MOU.

The Court concludes that the MOU was not superseded by the 2014 ESA.  The MOU contained a separate promise, requiring Idaho Power to "file the new

ESA with IPUC seeking approval." (Doc. 99-1). This promise contemplates an ongoing obligation even once the parties had executed the ESA. The 2014 ESA's merger clause applied to agreements concerning the "subject matter hereof." (Doc. 99-3 at 35). The parties separately negotiated the MOU, a document related to the subject matter of the ESAs. The MOU does not constitute an agreement for the purchase and sale of power, similar to the ESAs. The merger clause in the 2014 ESA operates to supersede prior ESAs. The 2014 ESA does not operate to supersede, however, the parties' independent promises in the MOU.

Two additional factors are worth noting. First, the 2014 ESA explicitly stated that it "shall only become finally effective upon the [IPUC's] approval of all terms and provisions without change or condition . . . ." (Doc. 99-3 at 31). The IPUC rejected the 2014 ESA, so it never became finally effective. Second, Idaho Power received a liquidated damages payment under the MOU, and now argues that the MOU is unenforceable. This position proves convenient for Idaho Power after it has received the benefit under the MOU's terms.

In order to be liable for a breach of contract, Idaho Power must have breached a contractual duty. *Shawver v. Huckleberry Estates. L.L.C.*, 93 P.3d 685, 692 (Idaho 2004) ("A breach of contract occurs when there is a failure to perform a contractual duty" (citation omitted)). To complete this analysis, the Court begins with a discussion of the terms in the MOU. Whether a provision proves

ambiguous presents a question of law for the Court to determine.  *McDevitt v. Sportsman's Warehouse, Inc.*, 255 P.3d 1166, 1170 (Idaho 2011).  If the Court determines that the provision is ambiguous, however, then it becomes a question of fact for the jury.  *Id.* at 1169.

In Idaho, contract interpretation begins with the contract's plain language. *Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 226 P.3d 1277, 1280 (Idaho 2010). In determining whether a contract is ambiguous, this Court ascertains whether the contract is reasonably subject to conflicting interpretations.  *McDevitt*, 255 P.3d at 1170.

Idaho Power argues that the language of the MOU unambiguously requires Idaho Power to file the specific contract, the 2014 ESA, with the IPUC.  (Doc. 84 at 12-15).   The MOU does not require Idaho Power to guarantee its approval, or to agree to any modifications.  *Id.*  Clark Canyon disagrees with this interpretation for two reasons.  Clark Canyon argues first that Idaho Power's interpretation requires the phrase "seeking approval" to be read out of the MOU.  (Doc. 105-1 at 6). According to Clark Canyon, the parties deliberately included the "seeking approval" language in the MOU.  (*Id.*).  This request, according to Clark Canyon, unambiguously requires more than simply filing the 2014 ESA with the IPUC. (*Id.*).  Second, Clark Canyon asserts that even disregarding the phrase "seeking approval," Idaho Power still breached the MOU because it actively provided

11

reasons for rejecting the 2014 ESA and advocated for its disapproval at the IPUC. *(Id.* at 6-7).

The phrase "seeking approval" in the MOU remains ambiguous in this context. Genuine issues of material fact preclude summary judgment on the breach of contract claim.  Examining the plain language of the provision demonstrates unambiguously that Idaho Power had a duty to file the 2014 ESA with the IPUC. What the phrase "seeking approval" adds to that obligation remains unclear.

Both Idaho Power and Clark Canyon present reasonable interpretations of the provision.  *McDevitt*, 255 P.3d at 1170.  If Idaho Power's obligation was simply to file the 2014 ESA with the IPUC, then the provision may have read: "Idaho Power will file the new ESA with the IPUC."  The provision instead reads: "Idaho Power will file the new ESA with the IPUC *seeking approval*."  (Doc. 99-1) (emphasis added).  Clark Canyon presents an equally reasonable interpretation that the phrase "seeking approval" imposes some additional obligation on Idaho Power beyond simply submitting the 2014 ESA.  A jury may conclude that, at the very least, the contractual duty in the MOU precluded Idaho Power from filing comments providing reasons for the IPUC to reject the 2014 ESA.

Idaho Power contends that the phrase "seeking approval" could be read to explain that the filing of the ESA with the IPUC would in itself be seeking approval of the 2014 ESA.  Similarly, Idaho Power persuasively argues that the

contract does not obligate it to agree to any modifications regarding the lapsed operation date, which is what Clark Canyon unilaterally requested the IPUC to do.

The existence of these conflicting, reasonable interpretations requires that the breach of contract claim be submitted to a jury. Clark Canyon has presented sufficient evidence, with inferences drawn in its favor, that a jury could conclude that Idaho Power breached its obligation in the MOU by submitting comments to the IPUC which provided reasons for the IPUC to reject the 2014 ESA. Idaho Power remains free to make its arguments regarding causation and IPUC's status as an independent, regulatory authority to the jury.

### B. Breach of Implied Covenant of Good Faith and Fair Dealing

Every contract contains an implied covenant of good faith and fair dealing that requires the parties to perform the obligations imposed by their agreement in good faith. *Shawver*, 93 P.3d at 692. A party breaches the covenant if it "violates, nullifies or significantly impairs any benefit of the contract." *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 863 (Idaho 1991). "No covenant will be implied which is contrary to the terms of the contract negotiated and executed by the parties." *Shawver*, 93 P.3d at 693.

Idaho Power asserts that it did not breach the implied covenant because the MOU does not contain the terms Clark Canyon contends Idaho Power breached. Idaho Power argues that nothing in the MOU obligated it to agree to a modification

of the 2014 ESA's terms, or to advocate for the approval of the Project. The reasons that preclude summary judgment on the breach of contract claim similarly apply here. While Idaho Power is correct that the MOU does not require Idaho Power to agree to modifications or guarantee the 2014 ESA's approval, a jury may reasonably conclude that it violated the breach of the implied covenant by providing reasons to the IPUC to reject the 2014 ESA. Whether Idaho Power's actions violated, nullified, or significantly impaired the benefit of the contract remains a question for the jury to resolve.

### C. PROMISSORY ESTOPPEL

Clark Canyon plead promissory estoppel as an alternative if the Court found that the MOU was not a valid contract. The Court has concluded that the MOU represents a valid contract and therefore Clark Canyon's claim of promissory estoppel must be dismissed.

### D. UNJUST ENRICHMENT

Under Idaho law, "[t]he elements of unjust enrichment are that (1) a benefit is conferred on the defendant by the plaintiff; (2) the defendant appreciates the benefit; and (3) it would be inequitable for the defendant to accept the benefit without payment of the value of the benefit." *Teton Peaks Inv. Co., LLC v. Ohme*, 195 P.3d 1207, 1211 (Idaho 2008) (citing *Gibson v. Ada County*, 133 P.3d 1211, 1224 (Idaho 2006)).

Clark Canyon clarifies that it bases this argument on promises made by Idaho Power in the MOU.  Clark Canyon asserts that it spent "significant time and resources upgrading Idaho Power's power distribution infrastructure, thereby conferring a benefit on Idaho Power" in reliance on these promises.  (Doc. 105-1). Clark Canyon upgraded Idaho Power's Petersen Substation in Montana at the cost of $1,121,936.06.  (Doc. 99 ¶ 79).  According to Clark Canyon, it would be inequitable for Idaho Power to retain the benefit of this upgraded substation without compensating Clark Canyon.  Idaho Power asserts that this claim cannot be maintained because an express contract exists covering the same subject.

Under Idaho law, recovery cannot be had for unjust enrichment where there exists an enforceable express contract covering the same subject matter. *Thomas v. Thomas*, 249 P.3d 829, 836 (Idaho 2011).  The Court sees no reason why Clark Canyon cannot request damages for the money it spent in upgrading Idaho Power's substation as part of its breach of contract damages.  The Court defers a final ruling on this claim for the time being.

## CONCLUSION

Clark Canyon's breach of contract claim survives summary judgment because the phrase "seeking approval" proves ambiguous and the extent of Idaho Power's obligations and whether it breached said obligations presents a question for the jury to determine.  Similarly, Clark Canyon's claim that Idaho Power

breached the implied covenant of good faith and fair dealing claim survives summary judgment.  Idaho Power is entitled to summary judgment on Clark Canyon's promissory estoppel and tortious breach of the implied covenant of good faith and fair dealing claims.  The Court defers ruling on the unjust enrichment claim.

**ORDER**

Accordingly, it is **ORDERED** that Idaho Power's Motion for Summary Judgment (Doc. 83) is **GRANTED**, in part, **DENIED**, in part, and **DEFERRED**, in part, as outlined above.

DATED this 10th day of August, 2020.


_____
Brian Morris, Chief District Judge
United States District Court